**GARY W. et al., Plaintiffs-Appellees,**

v.

**STATE OF LOUISIANA, etc., et al., Defendants,**

**Dr. William Cherry, Secretary of the Louisiana Department of Health and Human Resources, Defendant-Appellant.**

No. 78–3267
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 24, 1979.

---

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409.

Carmack M. Blackmon, Thomas S. Halligan, Asst. Attys. Gen., Baton Rouge, La., for defendant-appellant.

Daniel Yohalem, Washington, D. C., Marian Wright Edelman, William E. Rittenberg, New Orleans, La., Jessica Dunsay Silver, Atty., Drew S. Days, III, Cynthia L. Attwood, U. S. Dept. of Justice, Civil Rights Div., Washington, D. C., for plaintiffs-appellees.

Before CLARK, HILL and FAY, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This appeal concerns the State of Louisiana's compliance with a 1976 court order protecting the rights of all mentally retarded, emotionally disturbed, and other children from Louisiana who had been placed in Texas institutions either by direct action of the State of Louisiana or with financial support from the state. In an excellent opinion, then District Judge Rubin analyzes the scope of the constitutional and statutory rights of these children, recognizes the violation of these rights by the State of Louisiana, and orders that the state provide each child with care, education, medical and personal treatment suited to his characteristics and needs regardless of his age, degree of retardation or handicapping conditions. *Gary W. v. Louisiana*, 437 F.Supp. 1209 (E.D.La.1976).[1] Two years later, the plaintiffs, dissatisfied with the progress toward implementation of the orders, filed a motion for the appointment of (a) a Special Master to advise the defendants and monitor implementation of the court's 1976 order and (b) a Planning Panel comprised of five experts to develop a comprehensive plan of implementation. The District Court granted the motion for the appointment of a Special Master and denied the motion for the appointment of a Planning Panel. The State of Louisiana appeals from the District Court's order for appointment of a Special Master and from the supplemental order detailing the duties and compensation of the Special Master,[2] contending that the

---

1. Judge Rubin's opinion may be consulted for a more detailed accounting of the sad situation of the children involved in this case.

2. The District Court's orders were issued pursuant to Rule 53 of the Federal Rules of Civil Procedure, in which provides for the appointment of masters as follows, in pertinent part:

    (a) Appointment and Compensation. Each district court with the concurrence of a majority of all the judges thereof may appoint one or more standing masters for its district, and the court in which any action is pending may appoint a special master therein. As used in these rules the word "master" includes a referee, an auditor, an examiner, a commissioner, and an assessor. The compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties or paid out of any fund or subject matter of the action, which is in the custody and control of the court as the court may direct. The master shall not retain his report as security for his compensation; but when the party ordered to pay the compensation allowed by the court does not pay it after notice and within the time prescribed by the court, the master is entitled to a writ of execution against the delinquent party.

    (b) Reference. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.

    (c) Powers. The order of reference to the master may specify or limit his powers and may direct him to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and may fix the time and place for beginning and closing the hearings and for the filing of the master's report. Subject to the specifications and limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order. He may require the production before

District Court: (1) erred in denying the appellants' motion for an evidentiary hearing on whether a Special Master should be appointed; (2) abused its discretion in ordering appointment of a Special Master; (3) abused its discretion in the grant of authority given the Special Master; and (4) erred in directing the state to pay the fees and expenses of the Special Master.

■ Our jurisdiction to review the propriety of the order for appointment of a Special Master has been questioned;[3] we must therefore resolve the jurisdictional issue before reaching the merits of the case.

In issuing the 1976 order protecting the plaintiff's rights, Judge Rubin noted:

> In general, the Court has tried to avoid ordering the parties to comply with an order that would have the infinite detail of a set of engineering specifications. It has attempted to write guidelines that would prevent child abuse and assure good treatment for children without writing an order that would require infinite precautions against spectral perils and without enmeshing treatment personnel in a bureaucracy. The children affected by this order will each have treatment plans; they will each be in a therapeutic institution; the institution and the child's plan will be subject to periodic review. These basic safeguards are essential, but, in some respects at least, they make certain detailed procedures sought by plaintiffs and plaintiff-intervenors unnecessary.

*Gary W. v. Louisiana,* 437 F.Supp. at 1223. Judge Rubin went on to provide: "The part of the Court's Order dealing with a Special Master is deleted. It will be covered in a later order." *Id.* at 1225. Hence, in the 1976 final order providing injunctive relief for the plaintiffs, Judge Rubin elected not to appoint a Special Master. The 1978 orders providing for the appointment of a Special Master thus modify Judge Rubin's

---

him of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto. He may rule upon the admissibility of evidence unless otherwise directed by the order of reference and has the authority to put witnesses on oath and may himself examine them and may call the parties to the action and examine them upon oath. When a party so requests, the master shall make a record of the evidence offered and exclude in the same manner and subject to the same limitations as provided in Rule 43(c) for a court sitting without a jury.

.    .    .    .    .

3. Prior to the appeal, the appellants moved to stay the District Court's orders relating to the Special Master. In denying the Motion for a stay in the proceeding, the District Court found that appointment of a Special Master is an interlocutory order and not appealable within the terms of 28 U.S.C.A. § 1292(a). The District Court declined to certify the question of the appointment under 28 U.S.C. § 1292(b).

Section 1292 on "Interlocutory decisions" provides:

(a) The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

(2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;

(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed;

(4) Judgments in civil actions for patent infringement which are final except for accounting.

(b) When a district judge, in making a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

1976 injunctive order. We therefore are accorded appellate jurisdiction of this appeal under 28 U.S.C. § 1292(a)(1). *See Pershing Auto Rentals, Inc. v. Gaffney,* 279 F.2d 546 (5th Cir. 1960); *Boson v. Rippy,* 275 F.2d 850 (5th Cir. 1960).

With regard to the merits of the appellants' arguments on appeal, we find the appellants' contentions to be ungrounded and therefore affirm.

## I.

The appellants first contend that the District Court erred in denying their motion for an evidentiary hearing on whether a Special Master should be appointed. Rule 53 does not suggest that such a hearing need be held. The appellants have cited no authority for this proposition. They argue that there was "no evidence" to support the orders, but the record before the District Court included their own Compliance Report of August, 1978, and the Louisiana State University team's reports, which show extensive noncompliance. The appellants have not attempted to controvert the factual statements in their own reports, nor have they suggested what evidence they would produce at an evidentiary hearing.

Generally, a district court has discretion not to hear oral testimony on motions. *See Franz Chemical Corp. v. Philadelphia Quartz,* 594 F.2d 146, 151 (5th Cir. 1979); *Wilkins v. Rogers,* 581 F.2d 399, 405 (4th Cir. 1978); *World Brilliance Corp. v. Bethlehem Steel Co.,* 342 F.2d 362, 366 (2d Cir. 1965); *United States Fidelity and Guaranty Co. v. Lawrenson,* 334 F.2d 464, 466–67 (4th Cir. 1964); Fed.R.Civ.P. 78.

The District Court found that "an evidentiary hearing was unnecessary in view of the detailed record available in this case and the state's semi-annual Implementation Reports, which provided extensive information about the numbers of children evaluated, time consumed in referral and evaluation, and descriptions of the facilities involved." We find no error in the District Court's denial of the motion for an evidentiary hearing. The District Court's unwillingness to delay further resolution of the plight of these children, absent compelling necessity, is commendable.

## II.

The appellants next contend that the District Court abused its discretion in ordering appointment of a Special Master, pointing out that "reference to a master shall be the exception and not the rule" under subsection (b) of Rule 53.

> The District Court noted that it considered many factors before determining that there were sufficient arguments to support the 'exception' of a reference to a master. . . . Chief among these were the evidence of non-compliance with Judge Rubin's final order and the need for daily supervision of the bureaucratic tangle between the Louisiana State University Medical Center ('LSU') and the [Louisiana] Department of Health and Human Resources.

The record amply supports the District Court's conclusion. Perhaps the most telling observation is that during the past two years the appellants have failed to comply substantially with the original injunction. Hundreds of children have not been evaluated by the LSU expert evaluation team. Of those evaluated, over fifty percent have not been placed as recommended by the team. Furthermore, there is no indication that, left unsupervised, the Department and the LSU team will make better progress.

The District Court's choice to refer the case to a Special Master is not extraordinary. In many cases involving similar facts or problems, Special Masters have been appointed. *E.g., Halderman v. Pennhurst State School and Hospital,* 446 F.Supp. 1295 (E.D.Pa.1977); *Taylor v. Perini,* 413 F.Supp. 189 (N.D.Ohio 1976); *Amos v. Board of Directors,* 408 F.Supp. 765 (E.D.Wis.), *aff'd sub nom. Armstrong v. Brennan,* 539 F.2d 625 (7th Cir. 1976), *vacated on other grounds,* 433 U.S. 672, 97 S.Ct. 2907, 53 L.Ed.2d 1044 (1977); *Morgan v. Kerrigan,* 401 F.Supp. 216 (D.Mass.1975), *aff'd,* 530 F.2d 401 (1st Cir.), *cert. denied sub nom. White v. Morgan,* 426 U.S. 935, 96 S.Ct.

2648, 49 L.Ed.2d 386 (1976); *Costello v. Wainwright,* 387 F.Supp. 324 (M.D.Fla. 1973), *aff'd,* 489 F.2d 1311 (5th Cir. 1974); *Hart v. Community School Board,* 383 F.Supp. 699 (E.D.N.Y.1974), *aff'd,* 512 F.2d 37 (2d Cir. 1975); *Davis v. Watkins,* 384 F.Supp. 1196 (N.D.Ohio 1974); *Moore v. Leflore County Board of Election Commissioners,* 361 F.Supp. 609 (N.D.Miss.1973), *aff'd,* 502 F.2d 621 (5th Cir. 1974); *Pennsylvania Ass'n for Retarded Children v. Pennsylvania,* 334 F.Supp. 1257 (E.D.Pa.1971), *modified,* 343 F.Supp. 279 (1972). This Court has recently asserted the desirability of appointing a master in a case where noncompliance with a previous court order is alleged. *Newman v. Alabama,* 559 F.2d 283, 289–90 (5th Cir. 1977), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978). These proceedings have now been pending for over four years and a significant number of the children involved still have not been accorded the relief ordered. Those two unfortunate facts belie the appellants' claim that the District Court abused its discretion in ordering the appointment of a Special Master.

### III.

■ The appellants further contend that the District Court abused its discretion by granting authority to the Special Master exceeding that authorized by subsection (c) of Rule 53. The appellants assert that the Special Master basically becomes the absolute overseer of implementation of the 1976 order. A thorough review of the District Court's supplemental order detailing the duties and compensation of the Special Master reveals that the appellants' contention is without basis. The Special Master's functions as fact finder, monitor and hearing officer are clearly spelled out. He is to make reports and recommendations to the District Court. Each party then has the right to object to these recommendations and be accorded hearings on objections, complete with the right to present evidence of a documentary and testamentary nature and to cross-examine adverse witnesses. The order specifically provides, "The Court retains the authority to reject or modify any recommendation by the Master regardless of whether any party has filed an objection."

The authority given the Special Master by the District Court comports with Rule 53(c). *See, e.g., Halderman v. Pennhurst State School and Hospital,* 446 F.Supp. at 1326; *Amos v. Board of Directors,* 408 F.Supp. at 822; *Pennsylvania Ass'n for Retarded Children v. Pennsylvania,* 334 F.Supp. at 1266.

### IV.

The appellants' final contention is that the District Court erred in ordering the state defendants to compensate the Special Master with departmental funds. The District Court noted that it would set the rate of compensation in a subsequent order and directed the state to deposit with the Clerk of Courts, upon order of the Court, $25,000 to serve as the compensation and expenses fund, along with such additional sums as the Court may order from time to time. The appellants find fault with the compensation portion of the order on two grounds: (1) Rule 53(a) contemplates compensation for a Special Master upon direction of the Court *after* the project is complete and does not contemplate an "ongoing, neverending appointment to be continually funded"; and (2) the Tenth Amendment prohibits the Court's requiring the state to expend $25,-000, plus additional sums, in this manner because these funds are public funds appropriated by the Louisiana Legislature on an annual basis for a specific purpose, and none of the money has been appropriated to compensate a Special Master in this case. The appellants are incorrect in both assertions.

■ Rule 53(a) provides that compensation shall be paid to the Master "as the court may direct." The appellants have cited no authority, and we are aware of none, for the proposition that the Master's task must be completed before his compensation may be exacted from the losing party. There is no error in the District Court's effort to insure the reference's smooth

function by having the compensation funds available for immediate distribution. If the Master in a potentially lengthy case had to wait for payment until his services were complete, it could be difficult to find someone willing to serve.

■■■ The appellants cite *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), in support of their Tenth Amendment claim. *National League of Cities* holds that Congress cannot legislate minimum wages and hours for state government employees because to do so would unconstitutionally interfere with internal state governmental functions. That holding cannot be transposed to the situation at hand, however, for "federal courts [may] enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." *Milliken v. Bradley*, 433 U.S. 267, 289, 97 S.Ct. 2749, 2762, 53 L.Ed.2d 745 (1977). A district court may enter a comprehensive order to insure against the risk of inadequate compliance where state authorities have failed in their affirmative obligations to cure constitutional violations. *Hutto v. Finney*, 437 U.S. 678, 687, 98 S.Ct. 2565, 2572, 57 L.Ed.2d 522 (1978). Moreover, an assessment of costs against the state is not prohibited by the state's Eleventh Amendment immunity. *Id.* at 696–97, 98 S.Ct. at 2576–78. Moneys paid for a master are included in the recoverable costs under Rule 54(d) of the Federal Rules of Civil Procedure; a district court does not abuse its discretion by taxing the losing party with the full share of the Special Master's fee. *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1323–24 (5th Cir. 1978). *Accord, K–2 Ski Co. v. Head Ski Co.*, 506 F.2d 471, 476–77 (9th Cir. 1974); *Norris v. Green*, 317 F.Supp. 100, 102–03 (N.D.Ala.1965). *See also Newman v. Alabama*, 559 F.2d at 290.

■■■ Given the District Court's finding in 1976 that the State of Louisiana had violated the constitutional and statutory rights of the children placed in Texas institutions and the state's failure in the two years since then to comply substantially with the Court's order, the assessment of the Special Master's fees and expenses against the appellants was without error.

AFFIRMED.