v.

### ORDER

**Maurice S. THOMPSON, et al., Plaintiffs-Appellees,**

v.

**Jiro J. ENOMOTO, Director, California Department of Corrections, et al., Defendants-Appellants.**

No. 85–1884.

United States Court of Appeals, Ninth Circuit.

Referred to Motions Panel Feb. 9, 1987.

Decided April 30, 1987.

master to monitor compliance with a consent decree comes to a motions panel, pursuant to action of the Conference Attorney who requested that the parties brief the issue of jurisdiction.[1] We find the order to be nonappealable and dismiss the appeal, *sua sponte*, for lack of jurisdiction.

## FACTS

Maurice Thompson and other "death row" inmates ("inmates") in the California State Prison at San Quentin commenced this civil rights action on July 6, 1979 against the State Director of Corrections and the Prison Warden (collectively referred to as the "Warden") complaining of prison conditions and treatment and alleging, *inter alia*, violation of the eighth and fourteenth amendments of the Constitution of the United States,[2] and article I, sections 7 and 17 of the Constitution of the State of California.[3]

On October 23, 1980 the parties stipulated to a consent decree in the district court. The decree ordered the Warden to implement various changes in classification procedures and daily routines in San Quentin's North Segregation unit. The decree set forth minimum requirements for housing and treatment of condemned inmates. The decree also specified various types of personal property and clothing to be made available to these inmates and set guidelines for food service and visitation.

Since entry of the consent decree, the inmates have filed four motions to hold the

Jeffrey D. Wohl, San Francisco, Cal., for plaintiffs-appellees.

Michael D. O'Reilley, San Francisco, Cal., for defendants-appellants.

Before TANG, PREGERSON and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

This appeal from an interlocutory order of the district court appointing a special

1. Under this court's local rules, the jurisdictional question is properly before this motions panel.

   If a docketing statement indicates a jurisdictional defect, a judge, conference attorney or motions attorney may direct the parties by order, letter or telephone to address the question of jurisdiction in a specific form and time period.
   (9th Cir.R., App. C, § B.7)

2. With respect to the United States Constitution, plaintiffs claim that the conditions of their incarceration amount to cruel and unusual punishment proscribed by the eighth amendment. The eighth amendment, applicable to the states through the fourteenth, establishes limits on the conditions that states may impose on prisoners.

*Rhodes v. Chapman,* 452 U.S. 337, 344–45, 101 S.Ct. 2392, 2397–98, 69 L.Ed.2d 59 (1981).

3. Article I, section 7 of the California State Constitution provides, in pertinent part, that:

   (a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws;

   \*   \*   \*   \*   \*   \*

   (b) A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens. Privileges or immunities granted by the Legislature may be altered or revoked.
   Article I, section 17 of the California State Constitution provides:
   Cruel or unusual punishment may not be inflicted or excessive fines imposed.

Warden in contempt. All contempt motions but the last were subsequently withdrawn, after the Warden gave assurances of future compliance with the decree.

Significantly, a provision in the consent decree stated that in the event of a dispute over compliance with the decree, the court could establish procedures for the resolution of any such disputes.

> [I]n the event of a dispute, ... with respect to whether the terms of this decree have been reasonably complied with, any party may present such dispute to this Court which will then establish procedures for the resolution of such dispute and may thereafter issue such orders as it deems necessary to assure compliance.

4. The district court's interlocutory order was issued pursuant to Rule 53 of the Federal Rules of Civil Procedure, which provides for the appointment of special masters as follows, in pertinent part:

> (a) **Appointment and Compensation.** The court in which any action is pending may appoint a special master therein.
> \* \* \* \* \* \*
> (c) **Powers.** The order of reference to the master may specify or limit his powers and may direct him to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and may fix the time and place for beginning and closing the hearings and for the filing of the master's report. Subject to the specifications and limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order. He may require the production before him of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto. He may rule upon the admissibility of evidence unless otherwise directed by the order of reference and has the authority to put witnesses on oath and may himself examine them and may call the parties to the action and examine them upon oath. When a party so requests, the master shall make a record of the evidence offered and excluded in the same manner and subject to the same limitations as provided in the Federal Rules of Evidence for a court sitting without a jury.
> \* \* \* \* \* \*

5. Neither party argues that a right of appeal flows directly from an order entered pursuant to Rule 53.

Consent Decree of Oct. 23, 1980 at 2 (N.D. Cal.1980) (No. 79–1630). Referring to this provision, the inmates filed a motion in district court on January 11, 1985 requesting appointment of a special master pursuant to Fed.R.Civ.P. 53 [4] to assure compliance with the decree. Defendants objected.[5]

After considering written and oral arguments from both sides, the district court found that "exceptional conditions" warranted the appointment of a special master.[6] Accordingly, on March 25, 1985, Judge Weigel entered an order appointing Robert R. Riggs as "Monitor," and filed an accompanying Order of Reference, detail-

6. The district court's order, in part, states:

> The Court, having considered the arguments of counsel, both oral and written, finds that the following "exceptional conditions" warrant the appointment of a specialmaster [sic] in this case:
> A. Defendants' record of non-compliance with the provisions of the Consent Decree entered into on October 23, 1980. *New York State Assn. for Retarded Children, et al.,* [sic] *v. Carey,* 551 F.Supp. 1165, 1178 (E.D.N.Y. 1982), aff'd in relevent part [sic] 706 F.2d 956 (2d Cir.), cert. denied [, 464 U.S. 915], 104 S.Ct. 277 [, 78 L.Ed.2d 257] (1983); *United States v. City of Detroit,* 476 F.Supp. 512, 520 (E.D.Mich.1979).
> B. The complexity and detail of the Consent Decree and the conditions which it affects coupled with the Court's lack of resources to involve itself in the ongoing details of monitoring compliance and implementation. *Hoptowit v. Ray,* 682 F.2d 1237, 1263 (9th Cir.1982).
> C. Defendants' failure to present the Court with acceptable modifications of the Consent Decree, and the parties' inability to settle outstanding disputes on their own. *Cf. Halderman v. Pennhurst State School & Hospital,* 612 F.2d 84, 112 (3d Cir.1979), rev'd on other grounds [, 465 U.S. 89], 104 S.Ct. 900 [, 79 L.Ed.2d 67] (1984).
> D. The strained relations between counsel for both sides, and defendants' failure to even acknowledge any violation of the Consent Decree on their part. *Ruiz v. Estelle,* 679 F.2d 1115, 1161 (5th Cir.), modified on rehearing, 688 F.2d 266 (5th Cir.1982), cert. denied [, 460 U.S. 1042], 103 S.Ct. 1438 [, 75 L.Ed.2d 795] (1983).
> Order Granting Plaintiffs' Motion for Appointment of Special Master at 1–2 (N.D.Cal.1980) (No. C–79–1630–SAW).

ing the Monitor's responsibilities, authority and compensation.[7]

The Warden appealed the appointing order and this motions panel was presented with the narrow task of considering whether the court of appeals has jurisdiction.

## ANALYSIS

The issue of whether a district court's order appointing a special master to supervise compliance with a consent decree is immediately appealable presents a question of first impression in this circuit.

The court of appeals does not ordinarily have jurisdiction over appeals from interlocutory decisions. However, appellate jurisdiction exists for: *Interlocutory orders* of the district courts ... or of the judges thereof, *granting, continuing, modifying, refusing or dissolving injunctions,* or refusing to dissolve or modify injunctions, ....

28 U.S.C. § 1292(a)(1) (emphasis added).

We must first consider whether the consent decree before us is equivalent to an injunction. Injunctions are "orders that are directed to a party, enforceable by contempt, and designed to accord or protect 'some or all of the substantive relief sought by a complaint' in more than preliminary fashion." 16 C. Wright, A. Miller, E. Cooper and E. Gressman, *Federal Practice and Procedure: Jurisdiction* § 3922, at 29 (1977) (quoting *International Products Corp. v. Koons,* 325 F.2d 403, 406 (2d Cir. 1963)). *Accord Avery v. Secretary of Health and Human Services,* 762 F.2d 158, 160 (1st Cir.1985); *United States v. Western Electric Company,* 777 F.2d 23, 28 n. 12 (D.C.Cir.1985).

[1] Here, the consent decree prescribes conduct for the California Department of Corrections and compels compliance. Indeed, an inmates' motion for a contempt order for the Warden's alleged partial noncompliance with the decree is pending in the district court. Accordingly, we conclude that the consent decree is "sufficiently injunctive in nature" to be treated as an "injunction" under 28 U.S.C. § 1292(a)(1). *See Smith v. Eggar,* 655 F.2d 181, 184 (9th Cir.1981) (order enforcing an agreement of security).

We must next consider whether, under 28 U.S.C. § 1292(a)(1), the interlocutory order appointing the Monitor is an order "granting, modifying, refusing, or dissolving" the consent decree. *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996–97, 67 L.Ed.2d 59 (1981), set out a three-part test to apply in determining whether an appeal falls under 28 U.S.C. § 1292(a)(1): (1) does the order have the practical effect of the grant or denial of an injunction; (2) does the order have serious,

---

**7.** In pertinent part, the Order of Reference states that:

IT IS FURTHER HEREBY ORDERED that the powers of the Monitor are and shall be the following:

1. To enter, at any reasonable time, with or without advance notice, any part of any facility affected by the Consent Decree.

2. To interview, on a confidential basis or otherwise, any person, including any correctional staff member or inmate, affected by the Consent Decree. Defendants shall provide suitable facilities and arrangements for the conduct of such interviews under conditions satisfactory to the Monitor.

3. To attend institutional meetings and proceedings required by the Consent Decree.

4. To obtain any document in the possession of any party relevant to the state of compliance with the Consent Decree or the state of conditions of confinement in any unit which presently houses or may in the future house condemned prisoners.

5. To require the posting of notices in any part of any faciility [sic] affected by the Consent Decree, in such number and form as the Monitor may direct.

6. To convene hearings concerning any matter relating to the state of compliance with the Consent Decree or the state of conditions of confinement of condemned prisoners at San Quentin. To this end, the Monitor is empowered to require the attendance of witnesses, including both prisoners and employees of the California Department of Corrections, to make a record of the proceedings, and to exercise all other powers described in Federal Rule of Civil Procedure 53(c).

7. To retain from time to time experts, specialists, or other persons whose advice or testimony the Monitor deems necessary or desirable for the purpose of making findings concerning the conditions of confinement of condemned prisoners at San Quentin.

8. To recommend at any time modification or withdrawal of this Order of Reference.

Order of Reference at 2–3 (N.D.Cal.1980) (C–79–1630–SAW).

perhaps irreparable consequences; and (3) is the order one that can be effectively challenged only by immediate appeal? The Ninth Circuit adopted this test in *EEOC v. Pan American World Airways, Inc.*, 796 F.2d 314, 316-17 (9th Cir.1986).

*Gary W. v. Louisiana*, 601 F.2d 240 (5th Cir.1979), examined the State of Louisiana's compliance with a 1976 injunctive court order protecting the rights of mentally retarded, emotionally disturbed, and other handicapped children. *Id.* at 242. In 1978 the district court appointed a special master to monitor compliance with the 1976 order; on appeal, the Fifth Circuit held that the interlocutory appointment of a special master was a modification of an injunction under section 1292(a)(1) and therefore appealable. *Id.* at 243.

■ We agree with the Fifth Circuit to the extent that jurisdictional analysis under section 1292(a)(1) should focus on whether the interlocutory order appointing a special master "modifies" the consent decree. The inmates, however, argue that *Gary W.* is distinguishable and not controlling here. In *Gary W.* the district court had previously been requested to appoint a special master as part of the injunction and refused to do so. *Id.* Here, neither side raised the issue of a special master in shaping the consent decree. We find the decree implicitly contemplates appointment of a master by retaining authority to "establish procedures" for its compliance. Therefore, unlike *Gary W.*, appointment of the Monitor here is pursuant to, and not a modification of, the original consent decree. The appointing order appealed from does not have the practical effect of the grant or denial of an injunction.

*Carson* also requires a showing of serious and irreparable harm from the interloc-

utory order and a showing of no other opportunity for its effective appeal. Here, the Warden made no showing of serious or irreparable harm from the interim appointment of a master. In addition, the Warden has not shown that the appointment of a special master cannot be effectively reviewed when the district court decides whether to adopt the Monitor's recommendations.[8]

Furthermore, the congressional policy against piecemeal appeals is best served by deferring review. *Switzerland Cheese Association v. E. Horne's Market*, 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966). Appointment of the Monitor facilitates pretrial procedure and our review of the matter at this time would be premature. *See id.*

### CONCLUSION

The requirements of section 1292(a)(1) have not been met and we find that this court has no jurisdiction to hear the merits of this appeal.

DISMISSED.

---

**8.** The Monitor's report does not automatically become a final decision of the district court. Rather, the report may be adopted, rejected, or modified.

    IT IS FURTHER HEREBY ORDERED that any report of the Monitor shall be adopted as the findings of fact and conclusions of law of the Court unless, within ten days after being served with notice of the filing of the report, either side moves to reject or modify the report. The Court will entertain no objection to any report unless it is shown as a preliminary

matter that an identical objection was submitted to the Monitor in the form of a specific written objection in accordance with the preceding paragraph of this Order. In accordance with Federal Rule of Civil Procedure 53(e)(2), the Court shall accept the Monitor's findings of fact unless clearly erroneous. Order of Reference at 3-4.