828 F.2d 536
 9 Fed.R.Serv.3d 51
 NATIONAL ORGANIZATION FOR THE REFORM OF MARIJUANA LAWS; the
Civil Liberties Monitoring Project, Inc., a California
nonprofit corporation; National Organization for the Reform
of Marijuana Laws, a non-profit District of Columbia
Corporation; the Civil Liberties Monitoring Project, Inc.,
a California Non-Profit Corporation; Richard Jay Moller, a
California citizen; Katherine Bauer, a California citizen;
Patricia Parson, a California citizen, Plaintiffs-Appellees,
v.
Francis M. MULLEN, Jr., individually and in his official
capacity as Director of the Drug Enforcement Administration;
Casper Weinberger, individually and in his capacity as
Secretary of the United States Department of Defense,
William French Smith, individually and as head of the United
States Department of Justice, James M. Beggs, individually
and in his official capacity as administrator of the
National Aeronautics and Space Administration; John K. Van
De Kamp, individually and in his official capacity as
Attorney General of the State of California; Glendon B.
Cragi, individually and in his capacity as Chief Officer of
the California Highway Patrol, Defendants-Appellants.
 No. 86-1978.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 11, 1987.
Decided Sept. 21, 1987.
 
 Harold J. Krent, Washington, D.C., for defendants-appellants.
 R. Elaine Leitner and David J. Meadows, San Francisco, Cal., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before CHOY, PREGERSON and CANBY, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 The plaintiffs, the National Organization for the Reform of Marijuana Laws, the Civil Liberties Monitoring Project, and ten residents of Northern California (collectively "NORML"), brought this class action against various state and federal entities participating in the Campaign Against Marijuana Planting ("CAMP"). The complaint alleges that CAMP violated 42 U.S.C. Sec. 1983 and the fourth amendment to the United States Constitution in the execution of its marijuana eradication program. The district court issued a preliminary injunction limiting the scope of CAMP's activities. The district court later issued an order appointing a master to monitor compliance with the injunction. CAMP appeals this order.
 
 
 2
 CAMP argues that the prerequisites for appointment of a special master have not been met here, that the powers invested in the master are too broad, and that the federal entities participating in CAMP cannot be required to pay for the costs and expenses of the master. We hold that the order of reference is not appealable and that a writ of mandamus should not issue. We also hold that the federal entities can be required to pay for the costs and expenses of the master.
 
 BACKGROUND
 
 3
 CAMP is a law-enforcement program designed to halt the cultivation of marijuana in California. The program involves the use of airplanes and helicopters to locate areas in which marijuana is grown. Once those areas are located, CAMP agents obtain warrants, enter the areas, and destroy the plants. National Org. for the Reform of Marijuana Laws v. Mullen, 608 F.Supp. 945, 949 (N.D.Cal.1985), remanded for consideration of subsequent authority, 796 F.2d 276 (9th Cir.1986).
 
 
 4
 NORML contends, and has provided declarations to show, that CAMP engaged in warrantless searches and seizures, arbitrary detentions and destruction of property, invasion of privacy, and otherwise disruptive behavior. Id. at 950. The district court in preliminary injunction proceedings found that CAMP had conducted numerous illegal searches and seizures, may have illegally detained various individuals, and had created a hazard by violating FAA safety regulations. Id. at 965. The district court enjoined CAMP from making warrantless searches and using helicopters in various intrusive and unsafe ways and ordered CAMP to instruct its staff as to the terms of the injunction. Id. at 965-66.
 
 
 5
 The injunction issued on April 12, 1985. In September 1985, the district court heard NORML's motion to hold CAMP in contempt for violation of the injunction. On September 27, 1985, the district court denied the order to show cause with respect to contempt, but amended the injunction to require (1) that CAMP supervisory personnel meet with CAMP local team leaders to plan raids so as to minimize the risk of violating the injunction, (2) that CAMP local team leaders brief each team member before each raid as to the terms of the injunction and the scope of the raid, and (3) that all helicopter pilots involved in a raid be briefed about the injunction and the flight paths and altitudes that must be maintained to comply with the injunction. The September 27 order also announced the district court's intention to appoint a monitor pursuant to Fed.R.Civ.P. 53(a).[1] The September 27 order was not appealed.
 
 
 6
 On March 6, 1986, the district court filed its Order of Reference to Special Master. The court stated that even though NORML had not shown clear and convincing evidence that CAMP had deliberately violated the injunction, "[t]here was nevertheless credible evidence of violations." The district court continued as follows:
 
 
 7
 Such evidence of noncompliance with an injunction that first issued nearly a year earlier portends continuing violations, especially when viewed in light of the fast-paced and wide-ranging character of CAMP's surveillance and raid activities, the difficult legal issues involved, and the numerous affirmative measures that the Court has ordered defendants to undertake. These circumstances constitute an "exceptional condition," and call for the appointment of a Special Master (hereafter "Monitor") pursuant to Federal Rule of Civil Procedure 53 to monitor compliance with the injunction.
 
 
 8
 The district court stated that its appointment of the monitor was also made pursuant to "the inherent power of the Court to enforce its orders."
 
 
 9
 The March 6 order assigns the monitor, among other duties, the duty to "immediately report to the court any policies or practices that the Monitor believes may violate the letter or spirit of any term of the Preliminary Injunction." In addition, the order gives the monitor the following powers:
 
 
 10
 The Monitor shall not purport to direct any CAMP activities or agents, or issue orders, but shall have the power to:
 
 
 11
 [1.] obtain advance notice of CAMP-sponsored planning and training sessions that pertain to particular acts of surveillance and raids, and to attend such sessions, with or without advance notice to defendants;
 
 
 12
 [2.] obtain any document produced by CAMP or cooperating agencies or individuals that may be relevant to a determination of compliance with the injunction;
 
 
 13
 [3.] interview, on a confidential basis or otherwise, any CAMP director, supervisor, or team member, or any person assisting in the implementation of the CAMP program. However, the Monitor shall not base any findings or legal conclusions in any subsequent contempt hearing on statements received in this manner, or on statements received informally from citizens and witnesses;
 
 
 14
 [4.] obtain details of the times and locations of CAMP eradication raids and field operations in advance of those raids and operations, as soon as practicable after defendants determine the times and locations;
 
 
 15
 [5.] be present during CAMP ground and air surveillance, the execution of warrants and raids, and all other field activities, with or without advance notice, but complying with all reasonable requests of CAMP personnel or counsel regarding safety and secrecy;
 
 
 16
 [6.] upon receipt of declarations or pleadings alleging violations, or when otherwise necessary, convene evidentiary hearings concerning any matter relating to compliance with the Preliminary Injunction, compel the attendance of witnesses, and take evidence. At such hearings the Monitor shall give the parties a reasonable opportunity to be heard, make a stenographic record of the proceedings, and exercise all other powers described in Federal Rule of Civil Procedure 53(c);
 
 
 17
 [7.] within 15 days of the conclusion of any such hearing make written findings of fact and conclusions of law for submission to the Court; and
 
 
 18
 [8.] retain when necessary experts, specialists, or other persons whose advice or testimony the Monitor deems important to resolve questions concerning compliance with the injunction. The Monitor must obtain the approval of the Court before retaining any such person.
 
 
 19
 Pursuant to the order, the monitor must serve the parties with copies of a proposed report or proposed findings, give the parties sufficient time to submit objections and request a hearing, serve the parties with copies of any modifications of the report or findings, and hold hearings when requested, before filing any report or findings with the district court. The order also directs that all of the monitor's fees, costs, and expenses are to be borne by the defendants.
 
 DISCUSSION
 I. Appealability of the Order
 
 20
 Orders of reference to a master are generally interlocutory and not appealable. Deckert v. Independence Shares Corp., 311 U.S. 282, 290-91, 291 n. 4, 61 S.Ct. 229, 234, 234 n. 4, 85 L.Ed. 189 (1940); 9 C. Wright & A. Miller, Federal Practice & Procedure, Sec. 2615 (1971). However, CAMP contends that the March 6 order of reference modifies a preliminary injunction under 28 U.S.C. Sec. 1292(a)(1), and thus is appealable. It is true that 28 U.S.C. Sec. 1292(a)(1) allows appeals of interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court." But the March 6 order of reference is not on its face a modification of the preliminary injunction that issued on April 12 of the previous year or of the amendment to the April 12 injunction that issued on September 27 of the previous year.
 
 
 21
 CAMP contends, however, that by giving the monitor the power to obtain various types of information from CAMP, the March 6 order modified the injunction. The March 6 order, however, does not in fact modify any individual directive in the April 12 injunction or the September 27 amendment. We assume, therefore, that CAMP's contention is that by appointing a monitor and assigning the monitor investigative duties, the court has implicitly ordered the parties not to interfere with the monitor's duties, and this implicit order is itself injunctive.
 
 
 22
 If CAMP's contention is accepted, all orders appointing a master and assigning him or her powers that must be respected by the parties would be appealable, because, according to CAMP, all such orders are injunctive. Under Deckert, it is clear that orders of reference to a master are generally not appealable, and thus not injunctive. Deckert involved reference to a master "to take testimony and file a report." 311 U.S. at 286, 61 S.Ct. at 232. Thus in Deckert, as in the present case, the master was assigned duties with which the parties could not interfere. Deckert held that this reference was not appealable. It is therefore clear from Deckert that even if, as CAMP contends, an order of reference is construed to contain an implied order not to interfere with the duties of the master, such an order is not appealable.
 
 
 23
 CAMP relies on Gary W. v. Louisiana, 601 F.2d 240, 243-44 (5th Cir.1979), for the proposition that an order investing a master with investigatory powers is tantamount to a modification of an injunction. In that case, the district judge granted a permanent injunction following a trial. The district judge retained jurisdiction over the matter and, two years after the issuance of the permanent injunction, appointed a master to monitor implementation of the decree. The Fifth Circuit held that the order appointing the master modified the permanent injunction and was reviewable.
 
 
 24
 Gary W. is distinguishable. The order of reference in Gary W. followed a final judgment on the merits, viz., the permanent injunction. Courts allow appeals from post-judgment orders or decrees more readily than from interlocutory orders or decrees. "The policy against and the probability of piecemeal review is not as decisive a consideration after judgment as before judgment since the underlying dispute is already settled. Moreover, unless such orders are found final, there is often little prospect that further proceedings will occur to make them final." United States v. Washington, 761 F.2d 1404, 1406 (9th Cir.1985) (citations omitted), cert. denied, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).
 
 
 25
 Furthermore, recent authority of this court makes it doubtful whether the present order of reference is appealable even if issued following final judgment. In Thompson v. Enomoto, 815 F.2d 1323 (9th Cir.1987), we determined that a post-judgment order of reference to a master to monitor compliance with a consent decree was not a modification of an injunction and thus not appealable. Id. at 1327. The order of reference in that case, like the one in the present case, gave the master the power to investigate by interviewing, attending meetings, obtaining documents, and convening hearings. In addition, the consent decree in Thompson, like the September 27 amendment to the preliminary injunction in the present case, contemplated the appointment of a master in the future to help ensure compliance. We held in Thompson that even when issued following final judgment or decree, an order of reference is not appealable as a modification of an injunction because it does not by itself have injunctive effect. It is important to point out, however, that the nonappealability of the order of reference does not preclude appeal of any district court order that may eventually stem from the master's findings or reports.
 
 
 26
 In light of Deckert and Thompson we hold that the order of reference is not appealable as a modification of the preliminary injunction.
 
 II. Mandamus
 
 27
 CAMP argues that, even if there is no jurisdiction under 28 U.S.C. Sec. 1292(a), this court has mandamus jurisdiction over the present controversy. Mandamus may be used to challenge a district court's improper exercise of power in appointing a master. LaBuy v. Howes Leather Co., 352 U.S. 249, 256, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957).
 
 
 28
 NORML maintains, however, that there is no mandamus jurisdiction because CAMP has not filed a petition for mandamus. In this circuit, however, we may, where appropriate, treat appeals as petitions for mandamus. See Hartland v. Alaska Airlines, 544 F.2d 992, 1001 (9th Cir.1976). Therefore, we may review the district court's order under mandamus jurisdiction if the test set forth in Bauman v. United States District Court, 557 F.2d 650 (9th Cir.1977) is satisfied.
 
 
 29
 Under the Bauman test, we consider the extent to which the following guidelines are met:
 
 
 30
 (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires.
 
 
 31
 (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.)
 
 
 32
 (3) The district court's order is clearly erroneous as a matter of law.
 
 
 33
 (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.
 
 
 34
 (5) The district court's order raises new and important problems, or issues of law of first impression.
 
 
 35
 Id. at 654-55 (citations omitted), quoted in Columbia Broadcasting Sys. v. United States Dist. Court, 729 F.2d 1174, 1177 n. 1 (9th Cir.1984); accord City of Las Vegas v. Foley, 747 F.2d 1294, 1296 (9th Cir.1984) (quoting In re Cement Antitrust Litigation, 688 F.2d 1297, 1301 (9th Cir.1982), aff'd sub nom. Arizona v. United States Dist. Court, 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983)). Rarely will all of these guidelines be satisfied in any individual case. To determine whether the remedy of mandamus is available, we are required to consider the extent to which the case before the court does nor does not conform with the guidelines. Bauman, 557 F.2d at 655 ("[R]arely if ever will a case arise where all the guidelines point in the same direction or even where each guideline is relevant or applicable.... [P]roper disposition will often require a balancing of conflicting indicators....").
 
 
 36
 The first guideline in the Bauman test is met in the present case because, as we just concluded, CAMP cannot appeal the order for which it seeks review. With respect to the second guideline, CAMP contends that it will be damaged in a way not correctable by appeal after trial. It argues that the master is currently hindering CAMP in its law-enforcement activities. If indeed the master improperly obstructs CAMP's efforts, the law-enforcement opportunities lost while this suit is pending can never be regained. Therefore, there is the prospect of irreparable harm, and the second guideline is met in the present case.[2] The third guideline, whether the district court's order was clearly erroneous, will be discussed in the next section of this opinion. The fourth guideline is not met in this case. There is no evidence that this purported error is frequently repeated or is a manifestation of disregard for the federal rules. The fifth guideline is met because whether a master may be employed to monitor compliance with a preliminary injunction of law-enforcement activities has not been decided in this circuit.
 
 
 37
 Because three of the guidelines are clearly met, the Bauman balancing test should allow mandamus jurisdiction over the pretrial order of reference to a master if the order was clearly erroneous as a matter of law. See In re United States, 816 F.2d 1083, 1091 (6th Cir.1987) (mandamus granted to vacate parts of pretrial order of reference). We address this issue below.
 
 A. Reference to the Master
 1. Rule 53(b)
 
 38
 Fed.R.Civ.P. 53(b) states in relevant part: "A reference to a master shall be the exception and not the rule.... In actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it."
 
 
 39
 CAMP argues that no exceptional condition is present in the instant action. CAMP contends that the district court appointed a master because of the prospect of numerous, time-consuming hearings concerning noncompliance with the injunction, and that this does not constitute an exceptional condition.
 
 
 40
 Contrary to CAMP's contention, the prospect of noncompliance is an "exceptional condition" that justifies reference to a master. The Supreme Court recently stated in a civil rights case in which the district court issued an injunction after trial that
 
 
 41
 in light of the difficulties inherent in monitoring compliance with the court's orders, and especially petitioners' established record of resistance to prior state and federal court orders designed to end their discriminatory membership practices, appointment of an administrator was well within the District Court's discretion. See Fed. Rule Civ.Proc. 53.
 
 
 42
 Local 28 of Sheet Metal Workers Int'l Ass'n v. Equal Employment Opportunity Comm'n, --- U.S. ----, 106 S.Ct. 3019, 3053, 92 L.Ed.2d 344 (1986); see Ruiz v. Estelle, 679 F.2d 1115, 1160-61 (5th Cir.), amended in part on rehearing, 688 F.2d 266 (5th Cir.1982); Gary W. v. Louisiana, 601 F.2d 240, 244-45 (5th Cir.1979).
 
 
 43
 CAMP contends, however, that an exceptional condition under Rule 53(b) arises only when there has been both a final determination of a constitutional violation and a determination of intentional disregard of court orders. We see no support for this argument in existing case law.
 
 
 44
 There are no judicial decisions requiring a final determination of constitutional violation before an "exceptional condition" justifying reference to a master can arise under Rule 53(b). See Inmates of Attica Correctional Facility v. Rockefeller, 453 F.2d 12, 25 (2d Cir.1971) ("The district court is directed to enter a preliminary injunction against such conduct and to consider any more specific measures that might be ordered to implement the [preliminary] injunction, including the appointment of federal monitors to serve at Attica."); Morales v. Turman, 364 F.Supp. 166, 179 (E.D.Tex.1973) (as part of preliminary injunction, court appoints "ombudsman" who has "the duty of reporting to this court ... any violation of this court's order"); see also Ruiz, 679 F.2d at 1160 n. 234 ("[R]ule 53 is concerned primarily with the appointment of a special master 'as a factfinder in advance of the court's remedial decree or as an expert to recommend the amount of damages or other remedial relief after a finding of liability.' ") (quoting Nathan, The Use of Masters in Institutional Reform Litigation, 10 U.Tol.L.Rev. 419, 428 (1979) (emphasis added in Ruiz )). We are aware of no holding of this court requiring a final determination of a constitutional violation before a district court may appoint a master under Rule 53(b). Any such requirement would severely limit the use of masters to aid courts in the enforcement of their orders and decrees.
 
 
 45
 Similarly, there is no circuit authority that requires a determination of intentional disregard of court orders before a special master may be appointed under Rule 53(b). In Hoptowit v. Ray, 682 F.2d 1237, 1263 (9th Cir.1982) (order of reference vacated because of error in findings of underlying violations), we upheld the appointment of a master to "monitor compliance with the court's orders." In that case, the reference to the master was part of the injunctive order. There in fact were no previous injunctive orders to be disregarded. We explicitly stated in Hoptowit that the exceptional condition requirement had been met "[b]ecause of the complexity of this litigation and of compliance with the district court's orders." Id. at 1263; accord New York State Ass'n for Retarded Children, Inc. v. Carey, 706 F.2d 956, 962-63 (2d Cir.) (complexity of consent judgment warrants appointment of master), cert. denied, 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983); Ruiz, 679 F.2d at 1162 ("The scope and complexity of the decree and the importance as well as the difficulty of ensuring compliance gave the court adequate reason" to appoint a master). The complexity of compliance, and not a finding of earlier noncompliance, provided the justification for reference to a master in Hoptowit.
 
 
 46
 CAMP could be understood to argue that despite the circuit court precedent, discussed above, the Supreme Court in Local 28 of Sheet Metal Workers International Association v. Equal Employment Opportunity Commission, --- U.S. ----, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986), established that final determinations of constitutional violation and of intentional disregard of court orders are prerequisites to a finding of "exceptional condition" under Rule 53(b). We reject this reading of Local 28.
 
 
 47
 Local 28 does involve a final determination, but the determination was that Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e-2000e-17, not the Constitution, was violated. 106 S.Ct. at 3026. Furthermore, although the district court in Local 28 did find that earlier court orders had been disregarded, it did not find, as far as can be discerned from the Supreme Court's opinion, that they had been intentionally disregarded.
 
 
 48
 In the instant case, the district court found a disregard of court orders, but not an intentional disregard. The district court stated in its order of reference:
 
 
 49
 The Court ruled that plaintiffs had failed to show by clear and convincing evidence that any defendant had deliberately violated the injunction. There was nevertheless credible evidence of violations, and the Court found that some CAMP personnel still are not adequately trained as to the terms and practical significance of the injunction, are not adequately briefed before each raid as to the permissible scope of and methods to be used in a raid, and are not adequately supervised. It was also apparent from the testimony that the raids are not sufficiently planned out ahead of time to minimize the chance of violations.
 
 
 50
 Such evidence of noncompliance with an injunction that first issued nearly a year earlier portends continuing violation....
 
 
 51
 In light of the fact that Local 28 does not involve a constitutional violation, all that remains of CAMP's argument, therefore, is that Local 28 requires a final judgment as a prerequisite for the existence of an "exceptional condition" under Rule 53(b), and that in doing so Local 28 implicitly overrules Inmates of Attica and Morales. In considering the factors that made appointment of a master appropriate, Local 28 never discusses or relies on the fact that the master was appointed after final judgment. Furthermore, the Court did not state that any particular fact is indispensable to the existence of an exceptional condition. All that can be concluded from Local 28, therefore, is that its facts are sufficient to support reference to a master, not that any particular fact is absolutely necessary. Accordingly, we decline to hold that Local 28 implicitly overruled Inmates of Attica and Morales. Instead, in rejecting CAMP's argument, we are satisfied to agree with the reasoning of these cases.
 
 2. The All Writs Act
 
 52
 In addition to invoking Fed.R.Civ.P. 53, the district court ordered reference to a master pursuant to "the inherent power of the court to enforce its orders." This inherent power is codified in the All Writs Act. 28 U.S.C. Sec. 1651(a) provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." One of the recognized applications of the All Writs Act is the issuance of orders necessary to ensure the integrity of orders previously issued. The Supreme Court "has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." United States v. New York Tel. Co., 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977).
 
 
 53
 The appointment of a master to monitor compliance with the preliminary injunction in the instant case validly applies the All Writs Act. The district court had reason to doubt that CAMP was complying with the preliminary injunction, and the Court had no other way to ensure that its order was not being frustrated. As the order of reference stated, the evidence of noncompliance
 
 
 54
 portends continuing violations, especially when viewed in light of the fast-paced and wide-ranging character of CAMP surveillance and raid activities.... Only a monitor, as the Court's expert on the exigencies presented by CAMP's aviation and field practices, remote and inaccessible terrain, and grower tactics, can provide the Court with objective, first-hand information necessary to fairly enforce its injunction.
 
 
 55
 Consequently, the district court's reference to a master was proper under the All Writs Act, as well as under Fed.R.Civ.P. 53, and was therefore not clearly erroneous as a matter of law.
 
 B. Duties of the Master
 
 56
 CAMP argues that the district court improperly gave the master the power to act as investigator as well as hearing officer. We adopt the position of the Fifth Circuit, which upholds the dual function of the master in the context of monitoring compliance with a court order. Ruiz v. Estelle, 679 F.2d 1115, 1170-71 (5th Cir.) (master had access to all records and meetings, the power to conduct confidential interviews, and the power to conduct hearings), amended in part on rehearing, 688 F.2d 266 (5th Cir.1982)[3]; Gary W., 601 F.2d at 245 ("The Special Master's functions as fact finder, monitor and hearing officer" held to be proper).
 
 
 57
 CAMP further contends that the duties assigned the master create an impermissible incursion upon the function of the executive. We have recognized the need for limitations upon the use of a master. Masters may not be placed in control of governmental defendants for the purpose of forcing them to comply with court orders. Hoptowit v. Ray, 682 F.2d 1237, 1263 (9th Cir.1982); see Sierra Club v. United States Army Corps of Eng'rs, 701 F.2d 1011, 1042-43 (2d Cir.1983); United States v. City of Parma, 661 F.2d 562, 578-79 (6th Cir.1981), cert. denied, 456 U.S. 926, 102 S.Ct. 1972, 72 L.Ed.2d 441 (1982). In the instant case, however, the master has not been given the power to control or administer CAMP's efforts, only to observe them. In fact, the March 6 order of reference states explicitly that "[t]he Monitor shall not purport to direct any CAMP activities or agents, or issue orders."
 
 
 58
 Finally, CAMP argues that the ability of the master to compel production of confidential documents and to conduct confidential interviews is improper. CAMP has pointed to no authority substantiating this argument, and we have found none. We reject this contention.
 
 C. Payment of Fees
 
 59
 CAMP argues that sovereign immunity allows the United States to avoid paying the master's fees, costs, and expenses as required by the district court's order. CAMP argues that the master's fees, costs, and expenses are "costs"[4] and that under 28 U.S.C. Sec. 2412(a)[5] and 28 U.S.C. Sec. 1920[6] the United States may not be forced to pay these costs.
 
 
 60
 We conclude that master's fees, costs, and expenses are "costs," and that 28 U.S.C. Sec. 2412(a) does not preclude payment of them by the federal government.
 
 
 61
 28 U.S.C. Sec. 2412(a) provides that the government may be assessed all costs listed in 28 U.S.C. Sec. 1920.[7] CAMP argues that 28 U.S.C. Sec. 2412(a) limits costs assessable to the United States to those listed in 28 U.S.C. Sec. 1920. This is incorrect. 28 U.S.C. Sec. 2412(a) states that "a judgment for costs, as enumerated in section 1920 of this title, ... may be awarded to the prevailing party in any civil action brought by or against the United States." This language is not explicitly exclusive. Moreover, the legislative history indicates that the purpose of section 2412(a) is to cause the United States to pay all costs that could be assessed an ordinary citizen. The Senate Report to the 1966 amendment at 28 U.S.C. Sec. 2412 states the following:
 
 
 62
 The present law permits a disparity of treatment between private litigants and the United States concerning the allowance of court costs. This bill will correct this disparity by putting the private litigant and the United States on an equal footing as regards the award of costs to the prevailing party in litigation involving the Government.
 
 
 63
 S.Rep. No. 1329, 89th Cong., 2d Sess., reprinted in 1966 U.S.Code Cong. & Admin.News 2527, 2528 (emphasis added); see 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2672 (1983). Because a court may assess a private party for master's fees and expenses as costs, 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice p 54.77 (1986), the court may also assess the United States for such costs. Young v. Pierce, 640 F.Supp. 1476, 1491 (E.D.Tex.1986), vacated on other grounds, 822 F.2d 1368 (5th Cir.1987).
 
 CONCLUSION
 
 64
 The March 6 order of reference to a master is not appealable. We therefore have construed the appeal as a petition for mandamus. We hold that the district court's March 6 order appointing a master, assigning the master specific duties, and assessing the defendants--including the federal entities--for the costs and expenses of the master, was not clearly erroneous.
 
 
 65
 Petition for a writ of mandamus is DENIED.
 
 
 
 [1]
 Fed.R.Civ.P. 53(a) states in relevant part: "The court in which any action is pending may appoint a special master therein. As used in these rules the word 'master' includes a referee, an auditor, an examiner, and an assessor."
 
 
 [2]
 Although there is the prospect of irreparable harm from interference with law-enforcement efforts pursuant to the order of reference, there is no prospect of irreparable harm from payment of the master's fees, costs, and expenses because the money paid can be recouped. For this reason, it is arguable that the second Bauman guideline is not met as to fees, and there should be no mandamus jurisdiction with respect to the part of the order of reference directing the payment of fees even if there is mandamus jurisdiction with respect to the remainder of the order. However, the importance of the issue of governmental immunity from the payment of such fees, and the absence of relevant precedent, that is, the strength of conformity to the fifth Bauman guideline, would support mandamus jurisdiction, other things being equal, despite the absence of irreparable harm
 
 
 [3]
 Ruiz did refuse to uphold the power of the master to submit reports to the court without allowing the parties the right to object. 679 F.2d at 1162-63. In the instant case, the order of reference affords the parties the opportunity to submit written objections to the master's reports and findings
 
 
 [4]
 Fed.R.Civ.P. 54(d) states in part: "[C]osts shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law."
 
 
 [5]
 28 U.S.C. Sec. 2412(a) states in part: "Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title ... may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity...."
 
 
 [6]
 28 U.S.C. Sec. 1920 states:
 "A judge or clerk of any court of the United States may tax as costs the following:
 (1) Fees of the clerk and marshal;
 (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
 (3) Fees and disbursements for printing and witnesses;
 (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
 (5) Docket fees under section 1923 of this title;
 (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
 A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."
 
 
 [7]
 NORML argues that the master's fees, costs, and expenses are taxable as costs under 28 U.S.C. Sec. 1920(6), which includes "[c]ompensation of court appointed experts." The legislative history, however, supports CAMP's argument that the words "court appointed experts" in 28 U.S.C. Sec. 1920(6) refer only to expert witnesses, and that the language does not include masters. The House Report to the bill enacting 28 U.S.C. Sec. 1920(6) states that the language in section 1920(6) referring to court appointed experts "makes express reference to the taxation of the compensation of a court appointed expert, as permitted by rule 706 of the Federal Rules of Evidence." H.R.Rep. No. 95-1687, 95th Cong., 2d Sess. 13, reprinted in 1978 U.S.Code Cong. & Admin.News 4652, 4664. Fed.R.Evid. 706, entitled "Court Appointed Experts," refers to expert witnesses