**ACF INDUSTRIES INCORPORATED; General American Transportation Corporation; Union Tank Car Company, Plaintiffs–Appellees,**

v.

**CALIFORNIA STATE BOARD OF EQUALIZATION, Defendant–Appellant.**

No. 93–15938.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 1994.

Decided Dec. 19, 1994.

Robert E. Murphy, Deputy Atty. Gen., San Francisco, CA, for defendant-appellant.

James W. McBride, Heiskell, Donelson, Bearman, Adams, Williams & Caldwell, Washington, DC, for plaintiffs-appellees.

Before: CHOY, FARRIS and BRUNETTI, Circuit Judges.

FARRIS, Circuit Judge:

## INTRODUCTION

Six companies that lease rail cars to railroads and shippers brought suit under § 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, 90 Stat. 54, recodified as

amended at 49 U.S.C. § 11503,[1] to enjoin California's collection of ad valorem property taxes. The California State Board of Equalization appeals the district court's order denying its motions (1) to dismiss, (2) for summary judgment, and (3) to modify a preliminary injunction, brought with respect to the Independent Carline plaintiffs; ACF Industries Incorporated, General American Transportation Corporation and Union Tank Car Company. The Board's motions did not address the claims of the Railroad Carline plaintiffs; Railbox Company, Railgon Company and TTX Company. The Railroad Carline plaintiffs are not parties to this appeal.

We have jurisdiction over the injunction order under 28 U.S.C. § 1292(a)(1) and review the district court's denial of the motions to dismiss and for summary judgment because they present the same issues as those raised by the injunction order. *See Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 837 n. 1 (9th Cir.1986).

We affirm in part, dismiss as moot in part, and remand.

## BACKGROUND

In 1976, Congress enacted the Railroad Revitalization and Regulatory Reform Act " 'to provide the means to rehabilitate and maintain the physical facilities, improve the operations and structure, and restore the financial stability of the railway system of the United States.' " *Burlington N. R.R. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 457, 107 S.Ct. 1855, 1857, 95 L.Ed.2d 404 (1987) (quoting § 101(a), 90 Stat. 31, 33). In furtherance of this objective, § 306 of the Act prohibits states "from enacting certain taxation schemes that discriminate against rail-

roads." *Department of Revenue v. ACF Industries, Inc.,* —— U.S. ——, ——, 114 S.Ct. 843, 846, 127 L.Ed.2d 165 (1994) (*ACF–Oregon* ).[2]

Plaintiffs sued to enjoin the Board's assessment and collection of 1992 ad valorem property taxes on their railroad cars and other rail transportation property. They allege that California has assessed their rail transportation property "at a ratio of assessed value to true market value which exceeds the ratio of assessed value to true market value of other commercial and industrial property in the State by more than 5%" in violation of § 11503(b)(1).

When this interlocutory appeal was filed, plaintiffs were also alleging that California's "imposition of any personal property tax on [them], where a substantial portion of the personal property of other commercial and industrial taxpayers in California is exempt, results in discriminatory treatment of common carriers by railroad" in violation of § 11503(b)(4). While the appeal was pending, however, plaintiffs voluntarily dismissed this claim because of the intervening Supreme Court decision in *ACF–Oregon,* —— U.S. ——, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994) (rejecting the same claim against Oregon).

The district court entered a stipulated preliminary injunction preventing the Board from collecting "any 1992 ad valorem taxes upon plaintiffs' railroad cars and other personal property which is rail transportation property." The stipulated preliminary injunction gave the Board through February 24, 1993 to conduct discovery and file a motion to modify the injunction. On February 24, 1993, the Board moved, with respect to

---

**1.** Upon recodification, the statutory language in § 306 was amended. These amendments "may not be construed as making a substantive change in the laws replaced." Act of Oct. 13, 1978, Pub.L. No. 95–473, 92 Stat. 1337, 1466; *Burlington N. R.R. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 457 n. 1, 107 S.Ct. 1855, 1858 n. 1, 95 L.Ed.2d 404 (1987). Further references to the Act are to the text of 49 U.S.C. § 11503. *See id.*

**2.** As relevant to this appeal, the section prohibits states from:
(1) assess[ing] rail transportation property at a value that has a higher ratio to the true market

value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of other commercial and industrial property.
. . . .
(4) impos[ing] another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of chapter 105 of this title.
49 U.S.C. § 11503(b)(1) and (4).

the Independent Carlines only, (1) to dismiss, (2) for summary judgment, and (3) to modify the preliminary injunction. The district court denied all three motions. The Board appeals.

## DISCUSSION

### I. Standard of Review

■ We will reverse a district court's refusal to modify a preliminary injunction "only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Miller ex rel. NLRB v. California Pacific Medical Ctr.,* 19 F.3d 449, 455 (9th Cir.1994) (en banc). The only grounds asserted by the Board to modify the injunction turn on questions of statutory interpretation and standing. We review de novo. *Jeldness v. Pearce,* 30 F.3d 1220, 1222 (9th Cir.1994) (statutory interpretation); *Nevada Land Action Ass'n v. United States Forest Service,* 8 F.3d 713, 715 (9th Cir.1993) (standing).

■ We also review de novo the denial of the motion to dismiss, *see Jones v. Union Pac. R.R.,* 968 F.2d 937, 940 (9th Cir.1992), and the motion for summary judgment. *Professional Programs Group v. Department of Commerce,* 29 F.3d 1349, 1353 (9th Cir.1994).

### II. The Merits

The Board argues that (1) the protections of the Act do not apply to the Independent Carlines' property, and (2) the Independent Carlines lack standing to sue. Both arguments hinge on what the Board describes as previously ignored differences between the Independent Carlines and the Railroad Carlines. Although the Board is correct in noting certain functional differences, these differences do not place the Independent Carlines' property beyond the scope of the Act.

### A. The Independent Carlines' Business

The Independent Carlines own specialty railroad cars, such as tank cars and covered hoppers. Unlike the Railroad Carlines, who lease their rolling stock directly to railroads, the Independent Carlines lease primarily to non-railroad commercial shippers. These leases are negotiated in a free market without direct regulation by the Interstate Commerce Commission. The shippers in turn contract with railroads to have the cars transported. The fee charged by the railroad for this service can either be a negotiated rate or a tariff approved by the ICC. The parties dispute the relative frequency of these methods of dealing between shippers and railroads.

The ICC tariff is computed on the assumption that the railroad is providing the rail car. When the railroad does not provide the car, it must reimburse the owner of the car for its use by payment of a mileage allowance. This mileage allowance is then, ordinarily, returned to the shipper under the terms of the lease agreement. The mileage allowance is paid to compensate the car owner for the costs of owning and maintaining the car, including property taxes. *See* 49 U.S.C. § 11122(b). The parties' expert witnesses disagree as to who ultimately bears the economic burden imposed by these taxes. The Independent Carlines contend it is borne primarily by the railroads. The Board contends that the cost is borne primarily by shippers. The appeal does not turn on resolution of this dispute.

### B. Applicability of Section 11503(b)(1)

■ Section 11503(b)(1) prohibits the states from assessing "rail transportation property" at a higher assessment ratio than "other commercial and industrial property." The Board contends that the specialty railroad cars leased by the Independent Carlines to shippers are not "rail transportation property."

For the purpose of § 11503, "'rail transportation property' means property ... owned or used by a rail carrier providing transportation...." § 11503(a)(3). The ICC further defines the term to include "all property and other assets, irrespective of ownership, that comprises the entire operating unit devoted to rail transportation service." 49 C.F.R. § 1201(ii)(30) (1992).

The plain language of the act and the ICC's regulation include the Independent Carlines' property. The Fifth Circuit so held

when presented with the identical question, reasoning that the Independent Carlines' rail cars are "rail transportation property" because they are an "integral and necessary part of the 'entire operating unit devoted to rail transportation services.'" *General American Transp. Corp. v. Louisiana Tax Comm'n,* 680 F.2d 400, 403 (5th Cir.1982) (quoting ICC regulation). Not only is this result supported by the statutory language, it is consistent with the statutory purpose of maintaining the financial stability of the railway system. *See Burlington N. R.R.,* 481 U.S. at 457, 107 S.Ct. at 1857–58.

The Board criticizes the decision in *General American Transportation Corp. v. Louisiana Tax Commission* as "unanalyzed," and urges us not to follow it. We are not persuaded by the Board's critique.

The Board argues that we must look beyond the statute's plain language because "[i]ncluding the cars leased to shippers in the definition of transportation property would produce insurmountable problems in relation to valid statutory construction." To create these "insurmountable" interpretive problems, the Board argues that (1) subsection (b)(4)'s protection of "rail carriers providing transportation" does not apply to the Independent Carlines because they are not railroads and do not provide transportation; (2) subsection (b)(4) is a catchall provision with broader scope than the limits contained in subsections (b)(1)–(3); and (3) because the Independent Carlines are not "rail carriers providing transportation" under (b)(4), their property cannot be "rail transportation property" as used in subsections (b)(1)–(3). To give meaning to all words in the statute, the Board reads the phrase "used by a rail carrier" in the statutory definition of "rail transportation property," to mean "leased to and taxable to the railroads."

To support its narrow reading of the Act, the Board relies on *Trailer Train Co. v. State Board of Equalization,* 710 F.2d 468 (8th Cir.1983), in which the Eighth Circuit found that § 11503(b)(4) applied to Trailer Train.[3] The Board contends that the Eighth Circuit's rationale, predicated on the close relationship between Trailer Train and the

railroads, has been improperly extended, without analysis, to the Independent Carlines. Two years earlier, however, the Eighth Circuit itself concluded that the definition of rail transportation property "does not turn on whether property is held under lease by private companies [as is the case with cars leased from the Independent Carlines] or railroads," as is the case with cars leased from the Railroad Carlines. *See Ogilvie v. State Bd. of Equalization,* 657 F.2d 204, 209 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981).

The Board also argues that legislative history supports its narrow reading of "rail transportation property." We have been willing to examine the Act's legislative history as an interpretive aid and to "look beyond the express language of [the] statute where a literal interpretation thwarts the purpose of the overall statutory scheme or leads to an absurd result." *Trailer Train Co. v. State Bd. of Equalization,* 697 F.2d 860, 865–66 (9th Cir.), *cert. denied,* 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983). As legislative history in support of its argument, the Board points to the fact that nowhere in it are leasing companies mentioned. To the extent this omission is relevant, it does not overcome the plain meaning of the statutory language. *See Burlington N. R.R.,* 481 U.S. at 461, 107 S.Ct. at 1860 (In "the absence of a clearly expressed legislative intention to the contrary, the language of the statute itself must ordinarily be regarded as conclusive." (internal quotation omitted)).

## C. Standing

■ The Board argues in the alternative that even if the Independent Carlines' railroad cars are "rail transportation property," they lack standing to challenge the Board's assessment. The Board's argument that the Independent Carlines do not have standing to challenge California's assessment under § 11503(b)(1) is foreclosed by our holding in *ACF Industries, Inc. v. Department of Revenue,* 961 F.2d 813, 817 n. 2 (9th Cir.1992) (*ACF–Oregon*), *rev'd on other grounds,* —— U.S. ——, 114 S.Ct. 843, 127 L.Ed.2d 165

**3.** Plaintiff TTX Company was formerly known as

Trailer Train Company.

(1994) that these same parties had standing to sue under § 11503(b)(4). We reject the Board's contention that the decision's standing analysis is not binding precedent.

■■■ The Board argues correctly that a panel of this Court is not bound by a sub silentio holding of a prior panel. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 119, 104 S.Ct. 900, 918, 79 L.Ed.2d 67 (1984). This correct statement of the law, however, does not support the Board's conclusion because the standing analysis in *ACF–Oregon* was not "sub silentio." *See* 961 F.2d at 817 n. 2 ("[W]e agree with the district court that the Carlines have standing."). Nor does the fact that Oregon had abandoned the standing issue on appeal change the analysis. Because jurisdiction turned on the standing question, the court was required to decide it. *See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" (alteration in original) (quoting *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)). In *FW/PBS, Inc.* neither the parties nor any other court raised the standing issue, but the Supreme Court sua sponte dismissed on that ground.

The Board also argues that our analysis in *ACF–Oregon,* is not binding because it was founded upon Oregon's concession that the Independent Carlines' property was transportation property. This argument confuses the independent questions of statutory interpretation and standing. As the Board itself argues, whether the Act applies to the Independent Carlines' property is a separate question from whether the Independent Carlines have standing to bring suit. A concession on the former question does not resolve the latter.

Even if we were not bound by our standing discussion in *ACF–Oregon,* we agree that the Independent Carlines have standing under § 11503(b)(1). There is no dispute that California directly assesses the Independent Carlines with the challenged tax and, true economic burden aside, it is the Independent Carlines who must pay it. With this factual starting point, the standing issue is not complex. *See Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992) (When plaintiff is the object of government action "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.").

The Board contends that none of the constitutional or prudential standing requirements are satisfied. *See generally Hong Kong Supermarket v. Kizer,* 830 F.2d 1078, 1081 (9th Cir.1987) (setting forth requirements). We will limit our discussion, however, to the two constitutional prerequisites on which the Board focuses.

The Board argues that because the Carlines are able to pass on most of the tax cost—the parties dispute whether it is to shippers or to railroads—they have not suffered an "injury" for standing purposes. The Supreme Court rejected this same argument in a commerce clause challenge to a Hawaii liquor tax. *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 267, 104 S.Ct. 3049, 3053, 82 L.Ed.2d 200 (1984). In *Bacchus,* Hawaii argued that liquor wholesalers who paid the tax had no standing because they were able to pass the tax on to customers and, therefore, suffered no injury. Without resolving the economic merit of that contention, the Court held that the wholesalers "plainly" had standing to challenge the tax. *Id.; accord, National Meat Ass'n v. Deukmejian,* 743 F.2d 656, 661 (9th Cir.1984) (rejecting California's "passback theory" as defense to tax that on its face discriminated against interstate commerce), *aff'd,* 469 U.S. 1100, 105 S.Ct. 768, 83 L.Ed.2d 766 (1985).

The Board also argues that the constitutional requirement of redressability is not satisfied because the Independent Carlines have not shown how a favorable decision will redress harm suffered by the *railroad.* This argument confuses the Board's contention that the Independent Carlines' rail cars are not "rail transportation property" with the question of standing. It is the Independent Carlines who are before us. A decision fa-

vorable to the Independent Carlines will indisputably redound to their benefit.

### D. Issues Related to Plaintiffs' Claims under § 11503(b)(4)

After briefing to this Court was completed, plaintiffs dismissed their discrimination claims under § 11503(b)(4).[4] The appeal from the denial of the motion to dismiss and the motion for summary judgment on these claims is therefore moot. *See Picrin–Peron v. Rison,* 930 F.2d 773, 775 (9th Cir.1991).

### E. Modification of the Preliminary Injunction

The district court denied the Board's motion to modify the preliminary injunction for the same reasons it denied the motions to dismiss and for summary judgment. The Board does not assert any independent grounds for reversing the injunction order.

Nonetheless, plaintiffs' dismissal of their § 11503(b)(4) claims affects the proper scope of a continuing preliminary injunction. In their § 11503(b)(4) claims, plaintiffs sought relief from *all* California ad valorem property taxes. In their remaining claims under § 11503(b)(1), plaintiffs seek only a reduction in the assessment ratio applied to their property. As a result, California will be entitled to collect some of the enjoined taxes. On remand, the district court should consider an appropriate modification to the preliminary injunction.

### CONCLUSION

The district court's order with respect to plaintiffs' claims under 49 U.S.C. § 11503(b)(1) is AFFIRMED. The appeal is DISMISSED as moot as it relates to plaintiffs' claims under 49 U.S.C. § 11503(b)(4). The case is REMANDED for modification of the preliminary injunction and further proceedings.

---

**4.** Despite the pendency of this appeal, the district court retained jurisdiction to enter the stipulated dismissal. *See Plotkin v. Pac. Tel. and Tel.,* 688

F.2d 1291 (9th Cir.1982) (affirming district court judgment granted while appeal of preliminary injunction order pending).