Evan Arthur HOOK, et al.,
Plaintiffs–Appellees,

v.

STATE OF ARIZONA, et al.,
Defendants–Appellants.

No. 95–15897.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 20, 1996.

Decided Oct. 25, 1996.

Gordon S. Bueler, Assistant Attorney General, Phoenix, AZ, for defendants-appellants.

Randy Papetti, Lewis & Roca, Phoenix, AZ, for plaintiffs-appellees.

Before: BEEZER and THOMPSON, Circuit Judges, and GONZALEZ, District Judge.*

DAVID R. THOMPSON, Circuit Judge:

The Arizona Department of Corrections (Department) moved in the district court to modify a consent decree to delete a provision which allowed state prisoners to receive three twenty-five pound packages each year during the December holiday season (holiday packages). The prisoners opposed this motion and moved to modify the decree to change the title of the list of people authorized to send holiday packages, and to permit inmates to possess and use "hot pots" in their cells to heat and cook food items.

The district court denied the Department's motion and granted the prisoners' motion. The court also appointed a special master to monitor compliance with the holiday package program.

The Department appeals. We have jurisdiction under 28 U.S.C. § 1292(a)(1) and we reverse. We conclude the Department established that there had been a substantial change of circumstances warranting its requested modification of the consent decree to eliminate the holiday package provision. With regard to the prisoners' motion, we conclude there was no showing that maintenance of hot pots by the prisoners in their cells was intended to be part of the original decree, or that circumstances warranted the inclusion of such a provision. We do not reach the question whether the district court erred in modifying the decree to change the title of the list of people authorized to send holiday packages to inmates, and we conclude appointment of the special master has become moot.

## FACTS

In 1973, certain prisoners filed a civil rights action alleging the Department's mail policies violated their rights under the First and Fourteenth Amendments. The prisoners alleged they had a constitutional right to subscribe to certain magazines, including Playboy and Bachelor Beat; to send letters to judicial officers and people who were not on an approved mailing list; and to receive letters from more than ten people. The complaint did not mention or assert the right to receive holiday packages or to have "hot pots."

The same year, the Department proposed comprehensive mail regulations. The prisoners and the district court accepted and approved the regulations as the consent decree. The decree allowed each prisoner to receive three twenty-five pound packages between December 10th and 31st of each year. Specifically, the decree provided:

*Gift Packages—Incoming* Residents at all adult correctional institutions, except while in the Diagnostic–Reception Centers, may receive gift packages from those persons whose names appear on the resident's approved visiting list.

No soap, shampoo, toothpaste, deodorants, cigarettes, cigars, tobacco, vitamins or medicines may be included in packages. Food items may be sent only at Christmas and may not be packed in glass containers. A limit of three (3) packages of twenty-five (25) pounds each per resident will be permitted at Christmas time (December 10–31).

In October 1992, the Department moved to modify the decree to eliminate the holiday package provision. Because the motion was filed so close to the holidays, the district court stated it did not have time to issue a decision before packages were to be received under the decree.

The district court delayed ruling on the Department's modification motion until April 1995, because the Department and the prisoners were engaged in settlement negotiations. During this time, the district court appointed a special master to investigate the Department's alleged violations of the decree and to monitor the Department's compliance with it.

---

* Honorable Irma E. Gonzalez, District Judge for the Southern District of California, sitting by designation.

Before ruling on the Department's modification motion, the district court required the special master to issue a report with recommendations pertaining to the holiday package provision. In October 1994, the district court adopted most of the special master's recommendations and issued an order which purported to clarify the holiday package provision.

When settlement negotiations proved unsuccessful, the district court heard the Department's and the prisoners' motions to modify. The district court denied the Department's motion, granted the prisoners' motion, and this appeal followed.

## DISCUSSION

### A. The Modification Motions

█ We will reverse a district court's ruling on a modification motion "only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Miller v. California Pac. Medical Ctr.*, 19 F.3d 449, 455 (9th Cir.1994); *see also ACF Indus. v. California State Bd. of Equalization*, 42 F.3d 1286, 1289 (9th Cir.1994); *United States v. State of Or.*, 769 F.2d 1410, 1416 (9th Cir.1985).

█ When determining whether modification of a consent decree is appropriate, the district court should exercise flexibility. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383, 112 S.Ct. 748, 759–60, 116 L.Ed.2d 867 (1992). The party requesting modification has the burden to demonstrate that a "significant change" in fact or law warrants the modification. *Id.* at 383–84, 112 S.Ct. at 759–60. Modification is appropriate under this standard when "a decree proves to be unworkable because of unforeseen obstacles, or when enforcement of the decree without modification would be detrimental to the public interest." *Id.* at 384, 112 S.Ct. at 760 (internal citations omitted).

### 1. Department's Motion to Modify

█ Since the Department entered into the decree in 1973, the population of Arizona's prisons has increased significantly. In 1973, when the decree was approved, the prison population was 1,759. By 1994, the number of inmates had ballooned to 19,500. The Department projects the prison population will continue to increase by 100 new inmates per month. Beyond this rise in the number of inmates, the present prison population consists of an inordinate number of prisoners who are controlled substance abusers.

The explosion in prison population and the number of prisoners who have abused controlled substances present serious security risks to both the prison staff and the prisoners. This risk is exacerbated by the requirement that the prisons permit prisoners to receive the holiday packages. Each package must be inspected. During the four years between 1990 and 1993, an annual average of 24,250 packages were inspected at an average cost of $124,000 per year. These inspections divert staff from other duties, including monitoring security within the institution. The risk of contraband smuggling also is greatly increased. To date, controlled substances have been found in six holiday packages and one prisoner died from using heroin which he received in such a package.[1]

The district court found that the Department had anticipated a rise in the prison population and, thus, had not met its "heavy burden" of justifying modification of the decree. *See Id.* at 385, 112 S.Ct. at 760–61. We conclude that this finding is clearly erroneous. Certainly, the Department anticipated an increase in the prison population. However, there is no evidence which suggests that, at the time the Department entered into the decree, it foresaw the explosion in the number of incarcerated prisoners or that such a large portion of them, approximately 70%, would be controlled substance abusers.

---

1. The prisoners argue these numbers are insignificant because during the four years between 1990 and 1993, a total of 97,000 holiday packages were received and only six were found to contain controlled substances. This argument misses the point. The fact that controlled substances have been found in holiday packages confirms the prison's need to detail personnel to assure careful inspection and control of the packages.

The Department also presented uncontroverted evidence that mandatory sentencing legislation was enacted after the Department entered into the decree. This was an unforeseen development which resulted in longer prison sentences. Prisoners who previously would have served their time and left prison to make room for incoming prisoners now remain incarcerated, increasing the prison population in a way not anticipated when the decree was entered.

We conclude the consent decree should be modified to delete the holiday package provision. That provision has become an excessive burden on state prison authorities. It has significantly diminished their ability to maintain the security and safety of the prisons, and as a result it has proved to be detrimental to the public interest. The district court erred in denying the state's modification motion.[2]

### 2. Inmates' Motion

The district court modified the consent decree to include "hot pots" for prisoners. "Hot pots" are used by prisoners in their cells to heat and cook food items, not only during the holiday season but throughout the year. The district court found that hot pots had been permitted in Arizona's prisons since at least 1980. The court's modification order reads: "No orders, memorandums, instructions or regulations, or any directive to that effect, shall be issued by the [Department] in conflict with the prisoners' obtaining hot pots."

█ The district court erred in modifying the consent decree to include "hot pots" for the prisoners. Although, in the past, the Department permitted prisoners to have hot pots, there is no evidence that the parties intended to include hot pots as a contractual prisoner right within the consent decree. And, no one suggests the Constitution confers such a right.

Nor did the inmates present evidence of a significant factual or legal change in circumstances to justify inclusion of the requested "hot pot" provision in the decree. To the contrary, the Department demonstrated that the possession and use of hot pots by the inmates could pose a security problem.

### B. Appointment of Special Master

When the district court appointed the special master, the court limited the master's duties to investigating and monitoring compliance with the holiday package provision. The district court told the parties that in the future the court might expand the master's duties. However, there is no evidence in the record that the district court assigned duties to the special master beyond those associated with the holiday package program or that the special master is performing other duties. Because we instruct the district court to eliminate the holiday package provision from the consent decree, the district court's appointment of the special master has become moot.

### CONCLUSION

We reverse the district court's denial of the Department's motion to eliminate the holiday package provision from the consent decree, and remand to the district court for it to delete that provision from the decree. We reverse and vacate the district court's order granting the prisoners' motion to include in the consent decree a right to possess and use hot pots. We do not reach the question whether the district court erred in changing the title of the list of people authorized to send holiday packages to inmates. The district court's appointment of the special master has become moot.

**REVERSED and REMANDED.**

---

**2.** Our conclusion that the holiday package provision should be eliminated from the consent decree moots the inmates' motion to change the title of the list which named the people who could send holiday packages to inmates.