**Evan Arthur HOOK, et al.,**
**Plaintiffs–Appellees,**

v.

**STATE of ARIZONA, et al.,**
**Defendants–Appellants.**

No. 95–15897.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 20, 1996.

Opinion Filed Oct. 25, 1996.

Opinion Withdrawn July 17, 1997.

Decided July 17, 1997.

Gordon S. Bueler, Assistant Attorney General, Phoenix, AZ, for Defendants–Appellants.

Randy Papetti, Lewis & Roca, Phoenix, AZ, for Plaintiffs–Appellees.

Before BEEZER and THOMPSON, Circuit Judges, and GONZALEZ, District Judge.*

## ORDER

The petition for rehearing is granted. The opinion filed October 25, 1996 and published as *Hook v. Arizona*, 98 F.3d 1177 (9th Cir. 1996), is withdrawn.

A majority opinion and a concurring opinion, which replace the withdrawn opinion, are filed contemporaneously herewith.

## OPINION

DAVID R. THOMPSON, Circuit Judge.

The Arizona Department of Corrections (Department) moved in the district court to modify a consent decree to delete a provision which allowed state prisoners to receive three twenty-five pound packages each year during the December holiday season (holiday

---

* Honorable Irma E. Gonzalez, District Judge for the Southern District of California, sitting by designation.

packages). The prisoners opposed this motion and moved to modify the decree to change the title of the list of people authorized to send holiday packages, and to permit inmates to possess and use hot pots in their cells to heat and cook food items.

The district court denied the Department's motion, granted the prisoners' motion, and issued a clarifying order. The court also appointed a special master to monitor compliance with the holiday package program.

The Department appeals. We have jurisdiction under 28 U.S.C. § 1292(a)(1) and we reverse in part. We conclude the Department established that there had been a substantial change of circumstances warranting some modification of the holiday package provision of the consent decree. With regard to the prisoners' motion, we conclude there was no showing that maintenance of hot pots by the prisoners in their cells was intended to be part of the original decree, or that circumstances warranted the inclusion of such a provision. We affirm, however, the district court's order changing the title of the holiday package list and its appointment of a special master. We also hold the Department received adequate notice and an opportunity to be heard regarding the district court's clarifying order.

## FACTS

In 1973, certain prisoners filed a civil rights action alleging the Department's mail policies violated their rights under the First and Fourteenth Amendments. The prisoners alleged they had a constitutional right to subscribe to certain magazines, including *Playboy* and *Bachelor Beat;* to send letters to judicial officers and people who were not on an approved mailing list; and to receive letters from more than ten people. The complaint did not mention or assert the right to receive holiday packages or to have hot pots.

The same year, the Department proposed comprehensive mail regulations. The prisoners and the district court accepted and approved the regulations as the consent decree. The decree allowed each prisoner to receive three twenty-five pound packages between December 10th and 31st of each year. Specifically, the decree provided:

> *Gift Packages—Incoming* Residents at all adult correctional institutions, except while in the Diagnostic–Reception Centers, may receive gift packages from those persons whose names appear on the resident's approved visiting list.

> No soap, shampoo, toothpaste, deodorants, cigarettes, cigars, tobacco, vitamins or medicines may be included in packages. Food items may be sent only at Christmas and may not be packed in glass containers. A limit of three (3) packages of twenty-five (25) pounds each per resident will be permitted at Christmas time (December 10–31).

In October 1992, the Department moved to modify the decree to eliminate the holiday package provision. Because the motion was filed so close to the holidays, the district court stated it did not have time to issue a decision before packages were to be received under the decree.

The district court delayed ruling on the Department's modification motion until April 1995, because the Department and the prisoners were engaged in settlement negotiations. During this time, the district court appointed a special master to investigate the Department's alleged violations of the decree and to monitor the Department's compliance with it.

Before ruling on the Department's modification motion, the district court required the special master to issue a report with recommendations pertaining to the holiday package provision. In October 1994, the district court adopted most of the special master's recommendations and issued an order which purported to clarify the holiday package provision.

When settlement negotiations proved unsuccessful, the district court heard the Department's and the prisoners' motions to modify. The district court denied the Department's motion, granted the prisoners' motion, and this appeal followed.

## DISCUSSION

### A. The Modification Motions

■ We will reverse a district court's ruling on a modification motion "only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Miller v. California Pac. Medical Ctr.*, 19 F.3d 449, 455 (9th Cir.1994); *see also ACF Indus. v. California State Bd. of Equalization*, 42 F.3d 1286, 1289 (9th Cir.1994); *United States v. State of Or.*, 769 F.2d 1410, 1416 (9th Cir.1985).

When determining whether modification of a consent decree is appropriate, the district court should exercise flexibility. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383, 112 S.Ct. 748, 759–60, 116 L.Ed.2d 867 (1992). The party requesting modification has the burden to demonstrate that a "significant change" in fact or law warrants the modification. *Id.* at 383–84, 112 S.Ct. at 759–60. Modification is appropriate under this standard when "a decree proves to be unworkable because of unforeseen obstacles, or when enforcement of the decree without modification would be detrimental to the public interest." *Id.* at 384, 112 S.Ct. at 760 (internal citations omitted). If a party meets this burden, "the district court should determine whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 391, 112 S.Ct. at 763. The district court's "focus should be on whether the proposed modification is tailored to resolve the problems created by the change in circumstances." *Id.*

### 1. Department's Motion to Modify

■ Since the Department entered into the decree in 1973, the population of Arizona's prisons has increased significantly. In 1973, when the decree was approved, the prison population was 1,759. By 1994, the number of inmates had ballooned to 19,500. The Department projects the prison population will continue to increase by 100 new inmates per month. Beyond this rise in the number of inmates, the present prison population consists of an inordinate number of prisoners who are controlled substance abusers.

The explosion in prison population and the number of prisoners who have abused controlled substances present serious security risks to both the prison staff and the prisoners. This risk is exacerbated by the requirement that the prisons permit prisoners to receive the holiday packages. Each package must be inspected. During the four years between 1990 and 1993, an annual average of 24,250 packages were inspected at an average cost of $124,000 per year. These inspections divert staff from other duties, including monitoring security within the institution. The risk of contraband smuggling also is greatly increased. To date, controlled substances have been found in six holiday packages and one prisoner has died from using heroin which he received in such a package.[1]

The district court found that the Department had anticipated a rise in the prison population and, thus, had not met its "heavy burden" of justifying modification of the decree. *See id.* at 385, 112 S.Ct. at 760–61. We conclude that this finding is clearly erroneous. Certainly, the Department anticipated an increase in the prison population. However, there is no evidence which suggests that, at the time the Department entered into the decree, it foresaw the explosion in the number of incarcerated prisoners or that such a large portion of them, approximately 70 %, would be controlled substance abusers.

The Department also presented uncontroverted evidence that mandatory sentencing legislation was enacted after the Department entered into the decree. This was an unforeseen development which resulted in longer prison sentences. Prisoners who previously would have served their time and left prison to make room for incoming prisoners now remain incarcerated, increasing the prison

---

1. The prisoners argue these numbers are insignificant because during the four years between 1990 and 1993, a total of 97,000 holiday packages were received and only six were found to contain controlled substances. This argument misses the point. The fact that controlled substances have been found in holiday packages confirms the prison's need to detail personnel to assure careful inspection and control of the packages.

population in a way not anticipated when the decree was entered.

We conclude the district court abused its discretion in determining the Department did not meet its burden of demonstrating that changed factual circumstances warrant a modification. The changed circumstances, which raise security concerns for the institution, its employees, and the prisoners, warrant some modification to the holiday package provision. We remand the case to the district court so that it may determine a suitable modification to alleviate the security concerns. *See Ralls v. United States*, 52 F.3d 223, 226 (9th Cir.1995) (citing general rule that appropriate course is to remand action to district court).

### 2. Inmates' Motion

■ The district court modified the consent decree to include hot pots for prisoners. Hot pots are used by prisoners in their cells to heat and cook food items, not only during the holiday season but throughout the year. The district court found that hot pots had been permitted in Arizona's prisons since at least 1980. The court's modification order reads: "No orders, memorandums, instructions or regulations, or any directive to that effect, shall be issued by the [Department] in conflict with the prisoners' obtaining hot pots."

The district court erred in modifying the consent decree to include hot pots for the prisoners. Although, in the past, the Department permitted prisoners to have hot pots, there is no evidence that the parties intended to include hot pots as a contractual prisoner right within the consent decree. And, no one suggests the Constitution confers such a right.

Nor did the inmates present evidence of a significant factual or legal change in circumstances to justify inclusion of the requested hot pot provision in the decree. To the contrary, the Department demonstrated that the possession and use of hot pots by the inmates could pose a security problem.

The district court, however, did not err by changing the name of the list which identifies who may send the holiday packages. This was merely a semantic change and was made because the prior title caused confusion among the prisoners and the people who send the holiday packages. Further, the Department did not object to this change before the district court and, thus, has waived its challenge on appeal. *See United States v. Patrin*, 575 F.2d 708, 712 (9th Cir.1978).

### B. Notice and Opportunity to Be Heard

■ In October 1994, the district court issued its "clarification[s] of the consent decree." The Department argues these clarifications were actually modifications and it did not have notice of the changes or an opportunity to be heard.

The Department had ample notice and an opportunity to be heard. The district court notified the parties that clarifications were needed so that the district court could adequately address the parties' modification motions and the district court held a hearing. The Department also had an opportunity to discuss the proposed clarifications with the special master before the district court issued its order.

### C. Appointment of Special Master

The Department challenges the district court's appointment of the special master, arguing that no exceptional circumstances justified the appointment. We disagree.

■ We first must determine whether we have jurisdiction over this issue. We have concluded that an appointment of a special master is generally an interlocutory order and not appealable. *National Org. for Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 540 (9th Cir.1987). However, we also have suggested that a party may appeal an appointment in an appeal from the district court's order adopting or rejecting a master's recommendations. *Thompson v. Enomoto*, 815 F.2d 1323, 1327 (9th Cir.1987); *see also Burlington N. v. Department of Revenue*, 934 F.2d 1064, 1071 (9th Cir.1991) (concluding court has jurisdiction over appeal of appointment when appointment "inextricably bound up with" the appealable order).

■ The Department raises the appointment issue in its appeal from the district

court's modification order. The modification order clearly is appealable under 28 U.S.C. § 1292(a)(1). Further, as in *Burlington,* the appointment is inextricably intertwined with the district court's appealable order. The district court required the special master to submit a report detailing recommended modifications and clarifications to the decree and adopted a clear majority of the recommendations. We, therefore, conclude we have jurisdiction over the special master issue.

 We review for abuse of discretion the district court's appointment of a special master. *United States v. Suquamish Indian Tribe,* 901 F.2d 772, 774 (9th Cir.1990). A district court should appoint a special master only in exceptional circumstances. *Burlington,* 934 F.2d at 1071.

 The district court detailed the Department's history of noncompliance with the consent decree and stated it lacked the resources to constantly monitor compliance with the decree, as it was required to do because of the Department's noncompliance. The district court also determined a special master was needed due to the complexity of the underlying litigation. In these circumstances, the district court did not abuse its discretion. *See Suquamish,* 901 F.2d at 775 (concluding court may appoint special master "because of the complexity of litigation and problems associated with compliance with the district court order").

## CONCLUSION

We reverse the district court's denial of the Department's motion to modify the holiday package provision, and remand to the district court for it to devise a suitable modification. We reverse and vacate the district court's order granting the prisoners' motion to include in the consent decree a right to possess and use hot pots.

We affirm the district court's order changing the title of the list which identifies who may send the holiday packages. We hold the Department received adequate notice and an opportunity to be heard before the district court issued its clarification order. Finally, we affirm the district court's appointment of the special master.

AFFIRMED in part, REVERSED in part, and REMANDED.

BEEZER, Circuit Judge, concurring.

I concur in the judgment. I write separately to emphasize that the role of the federal courts does not include the micromanagement of state institutions.

The Arizona Department of Corrections has met its burden of establishing a change in circumstances, the significant expansion of the Arizona prison population, which warrants modification, and perhaps even elimination, of the holiday package provision of the consent decree. Although the district court retains responsibility for tailoring the modification to resolve the security problems created by this prison population explosion, *see Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 391, 112 S.Ct. 748, 763–764, 116 L.Ed.2d 867 (1992), the district court would do well to heed the views of the state prison authorities as to what constitutes a suitably tailored modification.

The Supreme Court has held that "the public interest and [c]onsiderations based on the allocation of powers within our federal system . . . require that the district court defer to local government administrators, who have the primary responsibility for elucidating, assessing, and solving the problems of institutional reform, to resolve the intricacies of implementing a decree modification." *Id.* at 392, 112 S.Ct. at 764 (internal quotations and citation omitted). Especially in the prison administration context, this admonishment should not be taken lightly: "[i]t is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Lewis v. Casey,* —— U.S. ——, ——, 116 S.Ct. 2174, 2197, 135 L.Ed.2d 606 (1996) (Thomas, J., concurring) (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 491–492, 93 S.Ct. 1827, 1837–1838, 36 L.Ed.2d 439 (1973)).

Due to the existence of the consent decree entered into over two decades ago, the district court unfortunately is entangled in the administration of the Arizona penal institutions. In my view, the district court should severely limit its administrative role. Tailoring a suitable modification to the consent decree presents the district court with such an opportunity. The Arizona Department of Corrections officials have the experience, expertise and the primary authority to run the prisons; these officials are in the best position to determine how the holiday package provision should be modified in order to alleviate security concerns.