**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 16 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| OREGON ADVOCACY CENTER; METROPOLITAN PUBLIC DEFENDER SERVICES, INC., | No. 20-35540 |
| Plaintiffs-Appellants, | D.C. No. 3:02-cv-00339-MO |
| v. | MEMORANDUM* |
| PATRICK ALLEN, Director of the Department of Human Services, in his official capacity; DOLORES MATTEUCCI, Superintendent of Oregon State Hospital, in her official capacity, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted May 6, 2021
Submission Withdrawn May 7, 2021
Resubmitted August 16, 2021
Portland, Oregon

Before: W. FLETCHER and FRIEDLAND, Circuit Judges, and BLOCK,** District Judge.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

Since 2002, the Oregon State Hospital and the Oregon Health Authority (collectively "OSH") have been subject to a permanent injunction that requires the hospital to admit certain mentally incompetent pretrial detainees "in a reasonably timely manner," and "not later than seven days" after the issuance of an order finding incompetence. *Or. Advoc. Ctr. v. Mink*, CV No. 02-339, 2002 WL 35578910, at \*7 (D. Or. May 10, 2002); *see also Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1105 (9th Cir. 2003). Those pretrial detainees are known as ".370 patients."[1] On April 17, 2020, in light of the COVID-19 pandemic, OSH filed a motion in the district court seeking a modification of the *Mink* injunction's seven-day deadline for admitting .370 patients until "it is medically safe for OSH to begin accepting patients in the normal course again." The district court granted the motion over the objection of Plaintiff Oregon Advocacy Center, which advocates for the rights of individuals with mental illnesses. This appeal followed. We vacate and remand.

We review a district court's grant of a motion to modify a permanent injunction for abuse of discretion. *See United States v. Asarco Inc.*, 430 F.3d 972, 978 (9th Cir. 2005). To prevail in its motion to modify the *Mink* injunction, OSH

---

[1] Under Oregon law, if a court finds that a defendant is incompetent to stand trial and that he requires a hospital level of care, the court may order that the defendant be committed to OSH. Or. Rev. Stat. § 161.370. Such orders are known as ".370 orders."

2

had to demonstrate a significant change in factual conditions that made compliance with the injunction "more onerous, unworkable, or detrimental to the public interest." *Id.* at 979 (quoting *Small v. Hunt*, 98 F.3d 789, 795 (4th Cir. 1996)). If OSH made such a showing, the district court could fashion a modification order that was "suitably tailored to resolve the problems created" by the changed factual conditions. *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1097 (9th Cir. 2021) (quoting *Asarco*, 430 F.3d at 979).

1. OSH met its burden to demonstrate that the COVID-19 pandemic made compliance with the *Mink* injunction more onerous. In response to the pandemic, OSH reconfigured units at both of its campuses to allow for isolation of potentially infected patients and protection of high-risk patients. For new admissions, OSH opened two admissions monitoring units, each of which could safely receive between fifteen and nineteen new .370 patients every two weeks. Opening those units required transferring patients among units at both campuses, all while attempting to prevent an outbreak among the patient population. Unsurprisingly, this proved burdensome for OSH during the pandemic's early stages.

2. The district court abused its discretion by failing to issue a modification order that was suitably tailored to the factual circumstances. Citing the district court's 2002 order in *Mink*, Plaintiffs argue that jails cannot provide adequate mental health treatment to individuals with .370 orders. As the district court stated

3

in 2002, "[d]epriving [individuals with .370 orders] of necessary medical treatment increases the likelihood that they may decompensate and suffer unduly," meaning that their conditions may worsen, or they may have difficulty gaining competency. At the same time, jails primarily employ disciplinary tools—such as solitary confinement—to control inmates' behaviors. These tools are ineffective when used to manage people with mental illnesses, and they can be very harmful. Individuals with .370 orders have a "high suicide risk," and disciplinary actions "exacerbate[] their mental illness." Consequently, according to the district court in 2002, "[e]very day of delay in transport harms those found unfit to proceed and hampers their ability to defend themselves."

The district court's modification order relaxes the *Mink* injunction's mandatory seven-day deadline for OSH to admit .370 patients without imposing meaningful parameters to ensure that the interests of those patients are served to the greatest possible extent. The modification order's only oversight requirements are that OSH provide progress reports to the court and to Plaintiffs "every three weeks," and that OSH appear at status conferences.[2] Although the circumstances presented by a new pandemic were certainly challenging, the district court had other options available. For example, the district court could have adopted

---

[2] Although we do not base our holding on events that postdate the district court's decision, we note that the court's reporting requirements have not been consistently followed.

parameters such as a sunset date after which the order would terminate (thereby requiring a new motion from OSH if it still wanted relief from the seven-day requirement), or it could have imposed a concrete alternative timeline for admitting individuals with .370 orders if seven days proved unworkable, or both. Alternatively, the district court could have ordered the modification to terminate at some date that would be tied to public health policy milestones, such as the lifting of Oregon's State of Emergency.

To be sure, the district court faced a difficult task during an unprecedented time. But an open-ended modification order is inconsistent with the urgent need to transfer individuals with .370 orders out of jails. The order is thus not "suitably tailored" to the factual circumstances. *Rousseau*, 985 F.3d at 1097.

On remand, the district court is instructed to reconsider whether a modification to the permanent injunction is needed, and, if so, to craft a more "suitably tailored" modification order. *Id.*; *cf. Hook v. Arizona*, 120 F.3d 921, 926 (9th Cir. 1997). The examples listed above are not directives; the district court should have the flexibility to conduct further factfinding and consider alternatives before issuing any further order.

**VACATED AND REMANDED.**

5